```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
ELAINE C. TRUMPETTO, et al.,        )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )     C.A. No. 18-683 WES
                                    )
LMW HEALTHCARE, INC., et al.,       )
                                    )
          Defendants.               )
_____)
```

## MEMORANDUM AND ORDER

Plaintiffs in this action seek damages over alleged medical malpractice resulting in the death of John A. Trumpetto ("the decedent"), who sought medical care at Westerly Hospital in Rhode Island and then died several days later in New York. Defendant Emergency Medicine Physicians of Washington County, LLC ("Defendant EMP" or "Defendant") filed a Motion for Application of New York Law ("Def. EMP Mot."), ECF No. 24, requesting that this Court apply New York law, instead of Rhode Island law, to the measure of damages. The other Defendant in this action, Defendant LMW Healthcare, Inc., has not signed onto Defendant EMP's Motion.

Due to Elaine C. Trumpetto's recent passing, Plaintiffs also filed a Motion to Substitute and Amend Complaint, ECF No. 31, seeking to substitute "Brynna C. Trumpetto, as Executrix of the Estate of Elaine C. Trumpetto" for "Elaine C. Trumpetto, individually" and "Brynna C. and Jared R. Trumpetto, as Co-

Executors of the Estate of John A. Trumpetto" for "Elaine C. Trumpetto, as Executrix of the Estate of John A. Trumpetto" and to accordingly amend the Amended Complaint, ECF No. 6. Only Defendant EMP filed an Objection to Plaintiffs' Motion to Substitute and Amend Complaint, ECF No. 32.

For the following reasons, Defendant EMP's Motion for Application of New York Law, ECF No. 24, is DENIED, and Plaintiffs' Motion to Substitute and Amend Complaint, ECF No. 31, is GRANTED.

I. BACKGROUND

Plaintiffs Elaine C. Trumpetto, Jared R. Trumpetto, and Brynna C. Trumpetto are immediate family members of the late John A. Trumpetto[1] – Elaine was John's wife, and Jared and Brynna are their children. See Am. Compl. ¶¶ 4-6. During the time period at issue, John and Elaine owned a home in New York, and a second home in Connecticut near the border with Rhode Island. Pls.' Opp'n 2-3, ECF No. 26. The relevant facts are as follows. On Friday, September 2, 2016, John and his family left New York and drove to their second home in Connecticut. Id. at 4. On Sunday, September 4, John began feeling poorly while at a beach in Rhode Island and apparently had symptoms of a heart attack. Id. John and his daughter drove to the Westerly Hospital in Westerly, Rhode Island that afternoon to go to the emergency

---

[1] Members of the Trumpetto family are referenced by their first names where needed for clarity.

2

room. Id. at 4-5; Am. Compl. ¶ 9. John was assigned to two emergency room providers – Kacia Toussaint, P.A. and Keith Hilliker, M.D. Pls.' Opp'n 5; Am. Compl. ¶¶ 10-13. Plaintiffs allege that despite his symptoms and need to be "admitted to the hospital for a comprehensive work-up of his coronary vessels[,]" John was discharged two hours after he arrived. Pls.' Opp'n 5-6; Am. Compl. ¶¶ 9, 14. John continued to feel unwell, and then on either Monday, September 5 or Tuesday, September 6, John and his family drove back to New York. Pls.' Opp'n 6. John passed away on Wednesday, September 7. Id.; Am. Compl. ¶ 15-16.

At the time these events occurred, Westerly Hospital was owned and operated by LMW Healthcare, Inc., which was organized as a corporation in Rhode Island. Pls.' Opp'n 4 (citing Articles of Organization, ECF No. 26-3). As a functioning hospital, Westerly Hospital was licensed and regulated by the Rhode Island Department of Health's Center for Health Facilities Regulation. Id. at 4-5 (citing R.I. Gen. Laws § 23-17-1 et seq., and R23-17-HOSP § 2.1). The emergency room providers were not direct employees of Westerly Hospital, as they were employed by Defendant EMP. Id. at 5. Defendant EMP was also organized as a business in Rhode Island. Id. (citation omitted). During this time period, both providers were licensed by the Rhode Island Department of Health. Id.

3

Plaintiffs' Complaint was filed on December 17, 2018, ECF No. 1, and amended on March 20, 2019. Plaintiffs allege two causes of action under Rhode Island's Wrongful Death Act: a personal injury "survival action" under R.I.G.L. §§ 9-1-6 and 9-1-7, and a "wrongful death action" under the Rhode Island Wrongful Death Act, R.I.G.L. § 10-7-1. Pls.' Opp'n 7; see also Am. Compl. ¶¶ 23-28, 33-38. Plaintiffs "seek damages available under the Wrongful Death Act, including John's pre-death pain and suffering under R.I.G.L. § 10-7-5, pecuniary damages under R.I.G.L. § 10-7-1.1 and 10-7-2, loss of spousal consortium under R.I.G.L. § 10-7-1.2(a), and loss of parental society under R.I.G.L. § 10-7-1.2(b)." Id.

## II. LEGAL STANDARD

While the parties agree that Rhode Island law governs the standard of care for the medical treatment Mr. Trumpetto received, they dispute which state law governs the measure of damages because they dispute whether the "injury" occurred in Rhode Island or in New York.[2] Pls.' Opp'n 8-9; Def. EMP Reply 2, ECF No. 27. Rhode Island allows family members of a deceased

---

[2] "[M]ultiple jurisdictions' laws may be applied under the principle of depecage." Alifax Holding SpA v. Alcor Sci. Inc., 357 F. Supp. 3d 147, 155 (D.R.I. 2019). "Depecage permits 'different issues in a single case, arising out of a common nucleus of operative facts, [to] be decided according to the substantive law of different states.'" Id. (quoting Alifax Holding SpA v. Alcor Sci., Inc., No. CA 14-440 S, 2015 WL 5714727, at *2 (D.R.I. Sept. 29, 2015)).

4

person to recover damages in wrongful death cases for the loss of consortium and loss of society. See R.I. Gen Laws § 10-7-1.2. New York does not. See Gonzalez v. New York City Housing Authority, 572 N.E.2d 598, 600-01 (N.Y. 1991) (noting that New York has "steadfastly restricted recovery to 'pecuniary injuries,' or injuries measurable by money, and denied recovery for grief, loss of society, affection, conjugal fellowship and consortium" (citation omitted)); Liff v. Schildkrout, 404 N.E.2d 1288, 1292 (N.Y. 1980).

A court sitting in diversity applies the choice-of-law principles of the forum in which the court sits. Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 41 (1st Cir. 2020) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Rhode Island follows the "interest-weighing approach" outlined in Woodward v. Stewart, 243 A.2d 917, 923 (R.I. 1968). The Woodward approach requires determination of which state "bears the most significant relationship to the event and the parties[.]" Goei v. Cbiz, Inc, No. CV 18-263-JJM-PAS, 2020 WL 5803220, at *4 (D.R.I. Sept. 29, 2020) (quoting Taylor v. Mass. Flora Realty Inc., 840 A.2d 1126, 1128 (R.I. 2004)). The court must weigh a set of four factors to be considered in tort cases, and five policy considerations to be considered in all cases:

    Tort case-specific factors:
1. The place where the injury occurred,
2. The place where the conduct causing the injury occurred,
3. The domicile, residence, nationality, place of incorporation and place of business of the parties, and,
4. The place where the relationship, if any, between the parties occurred,

See Taylor, 840 A.2d at 1128;

    General policy considerations:
1. Predictability of results;
2. Maintenance of interstate and international order;
3. Simplification of the judicial task;
4. Advancement of the forum's governmental interests; and,
5. Application of the better rule of law.

See Woodward, 243 A.2d at 923.

The "most important factor [in a tort case] is the location where the injury occurred[,]" though the other three tort-specific factors "should also be considered . . . ." Taylor, 840 A.2d at 1128 (citations omitted).

III. DISCUSSION

    A.   Tort Factors

While the decedent's injury "occurred" in New York, a comprehensive analysis of the tort factors and policy considerations relevant here demonstrates that Rhode Island law must apply to the measure of damages.

With respect to the first tort factor, New York is the place where the injury occurred. "[The] place of the wrong is 'considered to be the place where the last[] event necessary to

6

make the actor liable occurred.'" Goei, 2020 WL 5803220, at *5 (quoting Dodson v. Ford Motor Co., No. C.A. PC 96-1331, 2006 WL 2642199, at *3 (R.I. Super. Sept. 5, 2006)).  In Goei, a suit over accounting malpractice, this Court determined that because the Plaintiffs were living overseas and the Defendant was practicing in Rhode Island at the time he committed the alleged malpractice, "the center of [the] relationship is Rhode Island." Id.  Similarly, in Dodson, the plaintiff brought a products liability suit seeking damages for personal injuries incurred from a defectively designed and manufactured Ford vehicle. 2006 WL 2642199, at *1.  The vehicle caught fire in Rhode Island, resulting in the death of the plaintiff's mother. Id.  In deciding to apply Rhode Island law, the Superior Court of Rhode Island stated that because the "last event necessary to make Ford liable is the fire[,] . . . Rhode Island's punitive damages law should apply unless Ford can demonstrate that Michigan [where the vehicle was manufactured] has a more significant interest than Rhode Island in the application of its punitive damages law." Id. at *3.

Mr. Trumpetto's death in New York was the "last event" that could render Defendants potentially liable under the Wrongful Death Act. See Pls.' Opp'n 6.  Plaintiffs' argument that the "genesis" of the injury was in Rhode Island, see Pls.' Opp'n 11, is of no avail as to this factor, but is relevant to the others.

7

With respect to the second tort factor, Rhode Island is the place where the conduct causing the injury occurred. The medical treatment Mr. Trumpetto received, and therefore, the "genesis" of the injury, only occurred in Rhode Island. See Pls.' Opp'n 4; Mem. Supp. Def. EMP Mot. 2, ECF No. 24-1.

The third tort factor provides no additional clarity, as there is no common place where all parties are domiciled, incorporated, or have their principal places of business. Plaintiffs all reside in New York, as did the deceased. Am. Compl. ¶¶ 4-6. All Defendants, including Defendant EMP, are organized and operate in Rhode Island. Pls.' Opp'n 4-5 (citations omitted), Exs. 2-3. Plaintiffs note that Defendant EMP specifically is a domestic limited liability company that "conducted its business only . . . in Westerly, Rhode Island", a fact that Defendants do not dispute. Pls.' Opp'n 12.

As to the fourth and final tort factor, Rhode Island is the place where the relationship between the parties occurred. Defendant argues that, as to this factor, "there is a presumption that the law of New York should apply[] unless another state can demonstrate a greater relationship to the parties" because Mr. Trumpetto's death occurred in New York and therefore his injury occurred in New York. Mem. Supp. Def. EMP Mot. 3-4. Defendant relies on three cases to illustrate its point. In the first, Najarian v. National Amusements, Inc., the Rhode Island Supreme

8

Court ("RISC") stated that "in an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship[.]"  768 A.2d 1253, 1255 (R.I. 2001) (quotation omitted).

But the facts and ultimate holding in Najarian do not support Defendant's position.  In Najarian, a resident of Rhode Island fell in a theater in Massachusetts and suffered physical injuries after going to the state to see a movie.  Id. at 1254.  The RISC held that the trial justice erred in applying Rhode Island law instead of Massachusetts law because "[t]he place where the injury and the conduct allegedly causing the injury occurred was in Massachusetts" and "the relationship was centered in Massachusetts, where [the decedent] chose to purchase a ticket and attend a movie."  Id. at 1255.  In its analysis, the RISC also pointed to the fact that even though the domicile of the deceased was in Rhode Island and the specific chain of movie theaters was "registered in Rhode Island as a foreign corporation, the headquarters of [the parent company] was Massachusetts, and the place of business at issue was in Massachusetts."  Id.  Similarly here, the allegedly negligent conduct occurred at a Rhode Island hospital, by Rhode Island-licensed providers.  The deceased and Defendants were in Rhode

9

Island when that conduct occurred, and Defendants operate primarily in Rhode Island. Therefore, the relationship was "centered" in Rhode Island.

Defendant further argues that two other cases, Woodward – which first laid out Rhode Island's interest-weighing approach – and Ellington v. Davol, Inc., also support their position that the relationship occurred in New York. Mem. Supp. Def. EMP Mot. 4-6. Once again, the case law Defendant cites supports Plaintiffs' position. In Woodward, the RISC applied Rhode Island law to the question of damages in a tort case where the decedent, a Rhode Island resident, died in a motor vehicle accident in Massachusetts after departing from one town in Rhode Island to go to another town in the same state. 243 A.2d at 919, 923-24. In deciding that Rhode Island law applied, the RISC noted that "[t]he only reason that the [] car was in Massachusetts was that Interstate Route 195 was a convenient route between the two Rhode Island communities. At the time of the accident, deceased, being a passenger, may well not have been aware that he was in Massachusetts." Id. at 920. The fact that "[a]ll the parties involved were Rhode Island residents, their trip started in Rhode Island and was to end in Rhode Island, the guest-host relationship arose in Rhode Island and [the] suit was commenced in Rhode Island" indicated that Rhode Island, rather than

10

Massachusetts, would have an interest in the outcome of the action. Id. at 923-24.

In Ellington, a tort action involving defective hernia repair patches, the plaintiff had a surgery in Arizona to get the hernia patch, and then moved to Oregon, where she later developed complications. CA 007-470-ML, 2012 WL 2021908, at *1 (D.R.I. June 5, 2012). The plaintiff argued that Rhode Island law should apply, reasoning that it bore the most significant relationship to the parties in the case, because the product was designed, manufactured, and placed into the stream of commerce in Rhode Island. Id. at *2. The court determined that the plaintiff's state of residency and the place where the injury occurred should control, and Rhode Island law should not apply. Id. at *4.

Unlike the glancing interactions in Woodward and Ellington, here, the parties had a deliberate, professional interaction because of an emergency room visit in Rhode Island. The decedent was not unaware of the fact that he was in Rhode Island – he was vacationing in Rhode Island and chose to visit an emergency room in Rhode Island with Rhode Island providers. Moreover, his symptoms developed and continued while in Rhode Island – only his death occurred in New York. This factor therefore also weighs in favor of application of Rhode Island law.

11

B.   Policy Considerations

An analysis of the relevant policy considerations further demonstrates that Rhode Island law must be applied here.  As to the first, as healthcare providers operating in Rhode Island, Defendants can and should expect that Rhode Island's laws will be applied to them.  See Harodite Indus., Inc. v. Warren Elec. Corp., 24 A.3d 514, 527, 534-35 (R.I. 2011) (noting with approval the lower court's reasoning that "'it should not be a surprise to a Rhode Island domiciled corporation that it may be sued in a Rhode Island Court, under Rhode Island law, for a product manufactured in Rhode Island.'").  Like in Harodite Industries, it is predictable here that Defendants would be subject to Rhode Island laws.

Maintenance of interstate and international order, the second consideration, requires a determination of whether another state's law and policy would be "offended" by application of the state's law.  See Brown v. Church of Holy Name of Jesus, 252 A.2d 176, 180 (R.I. 1969).  In Brown, the RISC held that, where the decedent died in a drowning accident while participating in a Massachusetts outing conducted by a Rhode Island church that began and was intended to end in Rhode Island, the relationship centered in Rhode Island and required that the court apply Rhode Island law over Massachusetts law.  See id. at 177-78, 181.  In considering this factor, the RISC explained

12

that "Massachusetts law and policy would not be offended if Rhode Island law were applied to regulate the relation between a Rhode Island resident and a Rhode Island charitable corporation where the application of that law would not place any hinderance or burden on the party's incentive to use the facilities which Massachusetts wishes to provide them." Id. at 180.  The facts here are like those of Brown, as all Defendants are organized and do business in the state of Rhode Island and the interactions between Mr. Trumpetto and Defendants occurred in Rhode Island. Defendant contends that New York could be offended, as "[i]t would be unreasonable for the plaintiffs to predict that such a brief encounter in another state would lead to their damages claim being governed by the law of that state[,]" and "it would be expected that New York law would govern a New York family's loss that occurred and was experienced only in New York." Mem. Supp. Def. EMP Mot. 6.  But using Defendant's reasoning, patients traveling to other states after seeking medical care in Rhode Island would end up with different laws applied to them.  As Plaintiffs point out, the policy-makers in Rhode Island have expanded the loss of consortium damages available under R.I.G.L. § 10-7-1.2 in 1982, 1984, and 2010, whereas New York makes no such allowance. See Pls.' Opp'n 17-18.  Rhode Island's efforts in this area imply that it intended to provide remedies for immediate family members who have loss of consortium and loss

13

of society claims. As the Defendants are in Rhode Island and the center of the relationship is in Rhode Island, here it is more likely that Rhode Island would be "offended" by the application of New York law.

As to the third consideration, simplification of the judicial task, this Court noted in Gravina v. Brunswick Corp., "[o]nly in those cases in which foreign law is either very complex or very obscure is simplification of the judicial task entitled to very serious consideration. Where . . . the elements of the conflicting laws are simple and ascertainable, this interest factor cannot be of great importance." 338 F. Supp. 1, 5 (D.R.I. 1972) (applying Illinois over Rhode Island law). As the case law cited here demonstrates, a number of courts have interpreted the relevant Rhode Island and New York laws, so this consideration does not sway the analysis to either direction.

The fourth consideration, advancement of the forum's governmental interest, also supports the application of Rhode Island law. Defendant argues, relying on Tiernan v. Westext Transp., Inc., that Rhode Island "has less of an interest in protecting the plaintiffs because they are not its citizens or residents." Mem. Supp. Def. EMP Mot. 7 (citing 295 F. Supp. 1256, 1264 (D.R.I. 1969) (noting that "the state seeks . . . to protect its citizens")). But just because a state wants to protect its citizens does not mean its interest in protecting

14

non-citizens is insignificant. Given that Plaintiffs took it upon themselves to file suit in Rhode Island and the decedent received all of his medical care in Rhode Island, the facts suggest that Rhode Island has a more vested interest in this case than does New York.

The fifth and final consideration, application of the better rule of law, does not provide much additional clarity: The two states merely have differing approaches to damages recovery. New York has "steadfastly restricted recovery to 'pecuniary injuries,' or injuries measurable by money, and denied recovery for grief, loss of society, affection, conjugal fellowship and consortium." Gonzalez, 572 N.E.2d at 600-01 (citation omitted).[3] Rhode Island's Wrongful Death Act has no such restriction, rather allowing the decedent's spouse to recover for loss of consortium and the decedent's children to recover for loss of parental society and companionship. See R.I.G.L. § 10-7-1.2. To the extent the Court finds one "better", that call clearly favors Rhode Island's approach.

---

[3] There has been some condemnation of New York's law. See Gary v. Schwartz, 72 Misc. 2d 332 (N.Y. Sup. Ct. 1972) ("How long must we wait for the Legislature to act to overthrow the barbaric theory that a defendant who has wrongfully and negligently killed a child in effect bestows a benefit upon the parents by relieving them of their obligation to feed, clothe, and educate such child?"). The answer is apparently at least 50 years, given the judge asked this rhetorical question in 1972!

After analysis of each of the <u>Woodward</u> factors and policy considerations, it is clear that Rhode Island law should be applied to the measure of the damages here. While Plaintiffs are all domiciled in New York and the decedent died in New York, the facts and the case law suggest that the relationship was centered in Rhode Island and that Rhode Island has an interest in seeing its laws applied to address a dispute like this. Applying another state's law to an action for medical negligence where the interactions between the patient and the medical providers occurred solely in Rhode Island – merely because the decedent's death occurred in New York – could lead to disparate results in medical malpractice and wrongful death actions in Rhode Island. For all these reasons, Defendant Emergency Medicine Physicians of Washington County, LLC's Motion for Application of New York Law, ECF No. 24, is DENIED.

IV.  MOTION TO SUBSTITUTE AND AMEND COMPLAINT

Due to Elaine C. Trumpetto's recent passing, Plaintiffs move to substitute "Brynna C. Trumpetto, as executrix of the Estate of Elaine C. Trumpetto" for "Elaine C. Trumpetto, individually" and "Brynna C. and Jared R. Trumpetto, as Co-Executors of the Estate of John A. Trumpetto" for "Elaine C. Trumpetto, as Executrix of the Estate of John A. Trumpetto" and to amend the Amended Complaint to reflect the same. Pls.' Mot. to Substitute and Am. Compl. 1, ECF No. 31. Plaintiffs represent

that the amendment will "reflect that pursuant to R.I.G.L. § 9-1-6 and § 9-1-7, Elaine's loss of spousal consortium claim for the approximate four years and three months after her husband's death on September 7, 2016 and prior to her death on December 3, 2020 are being sought as damages by her Estate." Id. at 4. Defendant EMP contends that Elaine's loss of consortium claim under the Wrongful Death Act extinguished when she passed. Mem. Supp. Obj. to Mot. to Substitute and Am. Compl. 1, ECF No. 32-1.

Rhode Island's Wrongful Death Act is "remedial in nature, and [is] thus properly subject to a liberal application." State v. Amaro, 448 A.2d 1257, 1259 (R.I. 1982) (citation omitted); see also Giordano v. Assanah, July 5, 2016 Hr'g Tr., Case No. PC-2015-0633, ECF No. 31-1 (citing holding in Amaro). Justice Licht in Giordano, ruling from the bench, held that "loss of consortium claims are damages to the person which claims survive [that person's] death." July 5, 2016 Hr'g Tr. 5, Case No. PC-2015-0633. This Court agrees with Justice Licht's reasoning and reaches the same conclusion here. R.I.G.L. § 10-7-1.2(a) provides that "whenever the death of a married person shall be caused by the wrongful act, neglect, or default of another person, the decedent's spouse may recover damages against the person for loss of consortium." Defendant argues that this language shows that recovery for loss of consortium is limited

17

to the spouse, and the estate cannot recover should the spouse die. Mem. Supp. Obj. to Mot. to Substitute and Am. Compl. 2-3. But the Rhode Island Survival Statutes, R.I.G.L. § 9-1-6 and § 9-1-7, "can be read harmoniously" with the Wrongful Death Statute, particularly since R.I.G.L. § 10-7-1.2 is silent as to this subject. See Giordano, July 5, 2016 Hr'g Tr. 3, 5 (citing with approval Normandin v. Levine, 621 A.2d 713, 716 (1993) for applying the statute of limitations in R.I.G.L. § 9-1-14 to a loss of consortium claim in its finding that loss of consortium is an "action[] for damages to the person" under § 9-1-6). R.I.G.L. § 9-1-6 provides that following "the death of the plaintiff or defendant . . . the following causes of action or actions shall [] survive: Causes of action and actions for damages to the person or to real and personal estate." § 9-1-7 holds that an action under § 9-1-6 may be prosecuted by his or her executor if that person dies. As Justice Licht observed, construing § 10-7-1.2 to mean that a spouse could recover while alive but "the same recovery would not flow to his or her estate is strict, not liberal, construction" and doing as such would be "absurd." Giordano, July 5, 2016 Hr'g Tr. 5. A statute should not be interpreted to produce "an absurd result." Smiler v. Napolitano, 911 A.2d 1035, 1041 (R.I. 2006) (citation and quotations omitted); see also Bogosian v. Woloohojian, 93 F. Supp. 2d 145, 155-56 (D.R.I. 2000). This Court has already held

18

that under R.I.G.L. § 9-1-6, a "survival claim is the property of the testator before death and becomes an asset of his estate after death, with the power to maintain or initiate a suit to recover on the claim vested in his executor." Chu v. Legion of Christ, Inc., 2 F. Supp. 3d 160, 172 (D.R.I. 2014). That Plaintiff Elaine C. Trumpetto had the misfortune of passing away after properly filing her claims should not be held against her estate. Plaintiffs' Motion to Substitute and Amend the Complaint, ECF No. 31, is GRANTED.

V. CONCLUSION

Defendant's Motion for Application of New York Law, ECF No. 24, is DENIED, and Plaintiffs' Motion to Substitute and Amend Complaint, ECF No. 31, is GRANTED.

IT IS SO ORDERED.

/s/ WESmith

William E. Smith
District Judge
Date: March 22, 2021